# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH POETT,

    Plaintiff,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil No. 07-1374  (CKK)

## MEMORANDUM OPINION
(September 29, 2009)

Plaintiff, Joseph Poett, a chemist employed with the United States Department of Agriculture, brings the above-captioned lawsuit pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ("ADA"), seeking review of the decision by the Division of Select Agents and Toxins ("DSAT"), within the Centers for Disease Control and Prevention ("CDC") of the Department of Health and Human Services ("HHS"), to deny Plaintiff access to select agents and toxins within the course of his work as a chemist.  According to Plaintiff, the decision is arbitrary and capricious as well as in violation of both his First Amendment right to free association and his Fifth Amendment right to due process.  Plaintiff names as Defendants in this action the United States of America, the Attorney General of the United States, the Secretary of the United States Department of Agriculture, the United States Department of Agriculture, the Department of Health and Human Services, the Centers for Disease Control, and Robbin Weyant, Director of the DSAT.

Presently before the Court are the parties' cross-motions for summary judgment.  Upon

thorough consideration of the parties' submissions, including the attachments thereto, applicable

case law, relevant statutory and regulatory authority, and the administrative record filed in this

case, the Court shall remand this case to the Secretary for further explanation consistent with this

Memorandum Opinion, and shall DENY WITHOUT PREJUDICE the Defendants' [24] and

Plaintiff's [25] Motions for Summary Judgment, for the reasons set forth below.

## I.   BACKGROUND

A.      *Statutory and Regulatory Background*

As part of the Public Health Security and Bioterrorism Preparedness and Response Act of

2002, Pub. L. 107-188, Title II, § 201(a) *et seq.*, 116 Stat. 5974, 637 (hereinafter, the "Act"),

Congress established a statutory scheme for enhancing controls on dangerous biological agents

and toxins.  Pursuant to the Act, the Secretary of HHS (hereinafter, the "Secretary"), has

established "a list of each biological agent and each toxin that has the potential to pose a severe

threat to public health and safety."  42 U.S.C. § 262a(a)(1)(A); *see also* 42 C.F.R. §§ 73.3 & 73.4

(listing select agents and toxins).  Access to these select agents and toxins is limited "to only

those individuals . . . determine[d] to have a legitimate need to handle or use such agents and

toxins" and who have been reviewed by the Attorney General and approved by the Secretary.  *Id.*

§ 262a(e)(2)(A); *see also* 42 C.F.R. § 73.10(a) ("an individual may not access a select agent or

toxin, unless the individual is approved by the HHS Secretary . . . following a security risk

assessment by the Attorney General").

In order to apply for access approval, "each individual must submit the information

necessary to conduct a security risk assessment to the Attorney General."  42 C.F.R.§ 73.10(d);

*see also* 42 U.S.C. § 262a(e)(3)(A).  Upon receipt of this information, the Attorney General is

required to "use criminal, immigration, national security, and other electronic databases that are available to the Federal Government" to determine whether the individual requesting access to the listed agents or toxins fall into one of the two following categories of individuals who may be disqualified from having access to select agents and toxins: (1) "restricted persons" and (2) "individuals [] reasonably suspected by any Federal law enforcement or intelligence agency" of certain enumerated acts or conditions.  42 U.S.C. §§ 262a(e)(3)(B)(i)& (ii); *see also* 42 C.F.R. §§ 73.10(f)&(g).

With respect to the first category, a "restricted person" is statutorily defined as an individual who is:

(A) is under indictment for a crime punishable by imprisonment for a term exceeding 1 year;

(B) has been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year;

(C) is a fugitive from justice;

(D) is an unlawful user of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

(E) is an alien illegally or unlawfully in the United States;

(F) has been adjudicated as a mental defective or has been committed to any mental institution;

(G)(i) is an alien (other than an alien lawfully admitted for permanent residence) who is a national of a country as to which the Secretary of State, . . . has made a determination (that remains in effect) that such country has repeatedly provided support for acts of international terrorism, or (ii) acts for or on behalf of, or operates subject to the direction or control of, a government or official of a country described in this subparagraph;

(H) has been discharged from the Armed Services of the United States under dishonorable conditions; or

(I) is a member of, acts for or on behalf of, or operates subject to the direction or control of, a terrorist organization as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi)).

18 U.S.C. § 157b(d)(2).  If the Attorney General determines that an individual is a "restricted person," the Secretary is required to deny access to that individual.  42 U.S.C. § 262a(e)(2)(C); *see also* 42 C.F.R. § 73.10(g).

With respect to the second category, an individual applicant may be denied access if he or she is identified by the Attorney General as being "reasonably suspected by any Federal law enforcement agency or intelligence agency of:"

(I) committing a crime set forth in section 2332b(g)(5) of Title 18 [*i.e.*, a Federal crime of terrorism];

(II) knowing involvement with an organization that engages in domestic or international terrorism (as defined in section 2331 Title 18) or with any other organization that engages in intentional crimes of violence; or

(III) being an agent of a foreign power (as defined in section 1801 of Title 50).

42 U.S.C. § 262a(e)(3)(b)(ii).  If the Attorney General determines an individual is reasonably suspected of satisfying one of these three enumerated conditions, the Secretary, in consultation with the Attorney General, may "limit or deny access to agents and toxins, . . . if limiting or denying such access by the individuals involved is determined appropriate by the Secretary, in consultation with the Attorney General."  *Id.* § 262a(e)(2)(D); *see also* 42 C.F.R. § 73.10(g).

The Attorney General must promptly notify the Secretary of the results of this review once completed.  42 U.S.C. § 262a(e)(3)(C).  The Secretary is then required to determine whether the individual should be granted or denied access and communicate the same to the individual applicant in question.  *Id.* § 262a(e)(4).

An individual whose access approval has been denied or limited may appeal the

Secretary's decision.  42 C.F.R. § 73.10(h).  The appeal must be in writing, state the factual basis

for the appeal, and be submitted to the Secretary within 30 calendar days of the decision.  *Id.* §

73.20.  If the denial, limitation, or revocation of an individual's access approval was originally

based upon an identification by the Attorney General, the request for review will be forwarded to

the Attorney General for review.  *Id.*  The Secretary's decision constitutes final agency action for

purposes of the APA.  *Id.*; *see also* 42 U.S.C. § 262a(e)(7)(iii).[1]

  B.  *Factual Background*

  As previously stated, Plaintiff is a chemist employed by the United States Department of

Agriculture ("USDA").  Administrative Record, Docket No. [22-2] (hereinafter, "A.R")[2] at 12,

18.  During the course of his work with the Midwestern Laboratory, Office of Public Health

Science in the Food Safety Inspection Service ("FSIS") at the USDA, Plaintiff applied for and

was ultimately denied access to select agents and toxins.  A.R. at 39-40.  He has now filed the

instant civil action seeking review of that decision.

  1.  January 9, 1992 Letter from Plaintiff to the British Ambassador

  At the heart of the parties' current dispute is a letter, dated January 9, 1992, written by

---

  [1] The Secretary has delegated his authority under the Act, insofar as the Act pertains to the CDC, to the Director of the CDC.  *See* 71 FR 67130-01, 2006 WL 3340950 (Nov. 20, 2006).

  [2] Defendants have filed two versions of the Administrative Record in this case.  The first is an unredacted version that is filed under seal to protect certain personal identifying information located therein.  *See* Docket No. [20].  The second is a redacted version that is available on the public docket.  *See* Docket No. [22].  Because the Court does not rely in this Memorandum Opinion on any of the redacted material, the Court cites exclusively to the [20] redacted, publicly-available version of the Administrative Record.  In addition, the Court notes that the Administrative Record itself does not contain internal pagination; accordingly, for convenience, the Court shall refer to the ECF-pagination in citing to the Administrative Record.

Plaintiff to the British Ambassador.  A.R. at 4.  In the letter, Plaintiff expresses "regret" over his past "participation" with the Irish Northern Aid Committee in America ("NORAID")—an organization that has been identified by the United States as an organization that engages in international terrorism or international violence.  A.R. at 39.  The letter reads as follows:

> Dear Sir [Ambassador]:
>
> I regret my past participation in the Irish Northern Aid Committee in America (Noraid), fearring [*sic*] the funds others and I have solicited may have fallen into the wrong hands. I will pray for the peaceful resolution between the British and Irish People.
>
> Realizing now that in any way supporting violence against British civilians is wrong, I would gladly participate in any means [to] peacefully put an end to the fighting between two great nations.
>
> At your disposal,
>
> [signature]
>
> Joseph R. Poett

A.R. at 4.  As will become apparent below, this letter, and Plaintiff's alleged involvement with NORAID, form the basis of the now-challenged decision to deny Plaintiff access to select agents and toxins.

### 2.       Plaintiff's Application for Access to Select Agents and Toxins

On May 4, 2006, as part of the process for requesting the necessary security risk assessment required to obtain access to select agents and toxins, Plaintiff signed and submitted a FD-961 (Federal Bureau of Investigation Bioterrorism Preparedness Act: Entity/Individual Information).  *See* A.R. at 6-8.  The FD-962 was then sent to the Federal Bureau of Investigation's Criminal Justice Information Services Division (hereinafter, the "FBI") for the requisite security risk assessment.

6

By letter dated August 31, 2006, the FBI notified DSAT that it had determined Plaintiff to be a "restricted person" who "has involvement with an organization that engages in domestic or international terrorism or international crimes of violence," pursuant to 18 U.S.C. § 175b.  A.R. at 9-11.  DSAT in turn notified the responsible officials at the Midwestern Laboratory by letter dated September 5, 2006, that the Secretary had denied Plaintiff's application for access to select agents and toxins.  A.R. at 12.  DSAT advised that the decision to deny Plaintiff access was based on the "identification by the Attorney General that Joseph Poett is suspected by any Federal law enforcement or intelligence agency of having a knowing involvement with an organization that engaged in domestic or international terrorism (as defined in 18 U.S.C. 2331) or with any other organization that engaged in intentional violence."  A.R. at 12.  DSAT also sent Plaintiff a similar letter dated that same day, September 5, 2006, notifying him that his application had been denied because he had been identified as a "restricted person," as defined in 18 U.S.C. § 175b.[3]  A.R. at 13.

As is now apparent, this initial determination by the FBI and DSAT that Plaintiff was a "restricted person" is flawed for two reasons.  First, as both parties now agree, this initial determination, as described above, mistakenly confused the two categories of individuals who

---

[3] Although not referenced in the administrative record, the Court notes that the parties have both indicated in their briefing that Plaintiff was placed on paid administrative leave by FSIS shortly after his application was denied, from Monday September 11, 2006 through Friday, September 16, 2006, for a total of 45 hours, but that he thereafter returned to his job as a chemist at the Midwestern Laboratory. (Defs.' MSJ at 4, n. 6) ("Plaintiff was placed on paid administrative leave by the FSIS on Monday, September 11, 2006, through Friday, September 15, 2006, for a total of 45 hours. Plaintiff returned to work on Monday, September 18, 2006 and continues his job as a chemist at the Midwestern Laboratory."); Pl.'s MSJ at 2 ("Joseph Poett was placed upon administrative leave," which was subsequently "lifted and he returned to work").  Plaintiff has not raised or challenged the decision to place him on administrative leave in the filings now before the Court.

may be disqualified from access to select agents and toxins.  As previously explained, there are

two basic categories of individuals who may be disqualified from having access to select agents

and toxins: (1) "restricted persons" and (2) "individuals [] reasonably suspected by any Federal

law enforcement or intelligence agency" of certain enumerated acts.  42 U.S.C. §§

262a(e)(3)(B)(i)&(ii).  In each of the three letters referred to above and included in the

administrative record, the FBI and DSAT mistakenly intermixed these two separate categories by

indicating that a "restricted person" under 18 U.S.C. § 175b includes, *inter alia*, an individual

who "has involvement with an organization that engages in domestic or international terrorism or

international crimes of violence."  *See* A.R. at 10, 12, 13.  As DSAT later realized, this is an

incorrect statement.  Although an individual who is "reasonably suspected by a Federal law

enforcement or intelligence agency . . . of knowing involvement with an organization that

engages in domestic or international terrorism . . . or with any other organization that engages in

intentional crimes of violence" may be denied access to select agents and toxins, the individual is

denied access because he or she falls into the second—not the first—category of individuals

whose access may be denied or limited.  *See* 42 U.S.C. § 262a(e)(3)(B)(ii).  In other words, the

individuals are denied access because they are persons who are "reasonably suspected" by a

Federal law enforcement agency of certain enumerated conduct—not because they are "restricted

persons" pursuant to 18 U.S.C. § 175b.

    Second, in addition to misidentifying the cited language as relating to the first, rather than

second, category of individuals who may be denied access, the FBI also misquoted the relevant

statutory and regulatory language with respect to the second category of "reasonably suspected"

individuals.  As noted above, the Secretary may deny or limit access to those individuals who are

"reasonably suspected by any Federal law enforcement or intelligence agency of . . . *knowing*

involvement with an organization that engages in domestic or international terrorism (as defined

in section 2331 Title 18) or with any other organization that engages in intentional crimes of

violence." *Id.* (emphasis added).  The FBI, however, omitted the word "knowing" from its

findings, providing only that the FBI had determined that Plaintiff "has involvement with"

NORIAD—without indicating whether they reasonably suspected that the involvement was

knowing.  *See* A.R. at 10.[4]  In other words, in identifying Plaintiff as a restricted person, the FBI

cited to a misstated definition of "restricted persons" under 18 U.S.C. § 175b, which in turn

appears to have been based on a misstated definition of "reasonably suspected" persons under 42

U.S.C. 262a(e)(3)(B)(ii).

> 3.    Plaintiff's Appeal of the Denial of his Application for Access to Select
>        Agents and Toxins

Plaintiff was advised in the September 5, 2006 letter that he had a right to appeal the

denial of his application to the Director of the Select Agent Program with the CDC.  A.R. at 14.

He did so, and the administrative record shows that his appeal, submitted via counsel, was

received by the CDC on September 21, 2006.  A.R. at 15.  Correctly assuming that his

application had been denied because of his past association with NORAID, Plaintiff argued in his

appeal that any such association was "brief" and represented a "fluke" that did not properly

---

[4] Although not directly relevant to the instant dispute, the Court notes that the FBI also
misquoted 42 U.S.C. § 262a(E)(3)(B)(ii) when it used the phrase " . . . or with any other
organization that engages in *international* crimes of violence." *See* A.R. at 10 (emphasis added).
The statute correctly reads " . . . or with any other organization that engages in *intentional* crimes
of violence."  42 U.S.C. § 262a(E)(3)(B)(ii).  As is apparent upon review of the Administrative
Record, this mistake was frequently repeated by both the FBI and DSAT.  This mistake,
however, is not material to the instant Memorandum Opinion.

support DSAT's decision to deny him access to select agents and toxins. A.R. at 23. Plaintiff

also emphasized in his appeal papers that the September 5, 2006 letter notifying him of the denial

of his application contained an incorrect definition of "restricted person," and omitted any

requirement that his involvement with NORAID was "knowing." A.R. at 22. Plaintiff therefore

concluded that the decision was arbitrary and capricious and in violation of his First Amendment

rights because it denied him access solely on the basis of his association with NORAID, without

more. A.R. at 21-22. Finally, Plaintiff asserted that he had not been given notice and an

opportunity to be heard in violation of the Fifth Amendment. A.R. at 20.

Because the decision to deny Plaintiff's application had been based upon an identification

by the Attorney General, DSAT forwarded Plaintiff's appeal to the FBI as required by 42 C.F.R.

§ 73.20. *See* A.R. at 25. In a letter dated May 17, 2007, the FBI affirmed its initial

determination, finding that the Plaintiff had not shown on appeal that "the FBI erred in its

interpretation of the conviction status of the identified individual." A.R. at 27.

Significantly, however, the FBI's explanation for its decision to affirm—like its initial

determination—suffered from several key flaws, rendering the decision both internally

inconsistent and legally inaccurate. As a result, it is difficult to ascertain from the record now

before the Court what exact conclusions the FBI reached with respect to Plaintiff and his

involvement with NORAID. For example, in responding to Plaintiff's complaint in his appeal

papers that he had not received notice of the nature and cause of the accusations against him, the

FBI countered that it had adequately advised Plaintiff that he had been identified as a "restricted

person pursuant to Title 18, U.S.C., Section 175b, because of his 'involvement with an

organization that engages in domestic or international terrorism or international crimes of

violence." *Id.* Noticeably, this response again misstates the statutory definition of "restricted persons" under 18 U.S.C. § 175b and omits any requirement that Plaintiff's involvement with NORAID be "knowing." In the very next paragraph, however, the FBI *denies* Plaintiff's suggestion that it had relied upon a misstated the definition of a "restricted person," explaining that:

> [the restriction letter] does not misstate the statutory definition. The definition comes from 42 C.F.R., § 73.9(2)(ii):[5] "Having a knowing involvement with an organization that engages in domestic or international terrorism (as defined in 18 U.S.C. 2331) or with any other organization that engages in international crimes of violence. . . ."

*Id.* The above-quoted language appears to indicate that the FBI was aware of and based its determination on the correct statutory provision with respect to "reasonably suspected" persons (*i.e.*, requiring that the FBI find the Plaintiff's involvement is "knowing"). *See id.*

Thus, on the one hand, the FBI, in recommending that Plaintiff be denied access to select agents and toxins, appears to have applied an incorrect definition of the "restricted persons" standard, which is itself based on an incorrect version of the "reasonably suspected" category of persons. On the other hand, the FBI suggests that it did, in fact, rely on the correct statutory definition of "reasonably suspected" persons in making its initial determination that Plaintiff should be denied access. Given these internally inconsistent responses, it is simply unclear on the record now before the Court what statutory and regulatory language the FBI actually relied upon and applied in making its recommendation that the Plaintiff's application for access should be denied. In particular, it remains unclear whether the FBI reasonably suspected that Plaintiff's

---

[5] The Court notes that this response incorrectly identifies the applicable CFR provision: 42 C.F.R. 73.9 does not contain a paragraph numbered (2)(ii) nor does section 73.9, as a general matter, address the reasons why an individual may be denied access to select toxins and agents; rather, it appears that the FBI in fact meant to refer to 42 C.F.R. § 73.10(g)(1).

involvement with NORAID was "knowing."

Nonetheless, Defendant Weyant, who was at that time the Director of DSAT, notified Plaintiff's laboratory on May 29, 2007, that the FBI had "sustained its initial determination" and that "the denial to Joseph Poett's application for approval to access select agents and toxins is sustained." A.R. at 28. Significantly, in so doing, Defendant Weyant did not acknowledge the various errors in the FBI's findings, as outlined above.

### 4.       Plaintiff's Request for Reconsideration of his Appeal

By letter dated June 27, 2007, Plaintiff requested that DSAT "review the determination dated May 29, 2007, denying my access to select agents and toxins." A.R. at 30. Director Weyant subsequently notified Plaintiff, via counsel, that he would consider Plaintiff's request for reconsideration. A.R. at 37.

By letter dated November 7, 2007, Defendant Weyant advised Plaintiff, via counsel, that the decision to deny him access to select agents and toxins had been ultimately affirmed once again on reconsideration. A.R. at 39-40. In so doing, Defendant Weyant acknowledged for the first time that the initial identification of Plaintiff as a "restricted person" was incorrect. *See id.* Defendant Weyant nonetheless determined that Plaintiff's application should be denied, finding that—although Plaintiff is not a "restricted person" under 18 U.S.C. § 175b—he qualifies as an "individual who the Attorney General has identified as being reasonably suspected of knowing involvement with an organization that engages in domestic or international terrorism (as defined in section 2331 of Title 18, United States Code) or with any other organization that engages in intentional crimes of violence." A.R. at 40. Upon consideration of the information provided by the FBI and the information provided by Plaintiff himself in his appeal materials, Defendant

12

Weyant made four specific findings:

- Joseph Poett has admitted to being a member of Noraid, and therefore to have had knowing involvement with Noraid.

- The FBI reasonably suspects that [*sic*] Joseph Poett of knowing involvement with Noraid, an organization that engages in domestic or international terrorism (as defined in 18 U.S.C. § 2331) or that engages in international crimes of violence.

- The FBI has identified Noraid as an organization that engages in domestic or international terrorism (as defined in section 2331 of Title 18 of the United States Code) or that engaged in intentional crimes of violence.

- Joseph Poett has had knowing involvement with an organization that engages in domestic or international terrorism (as defined in 18 U.S.C. 2331) or that engages in intentional crimes ov violence.

*Id.*  Based on these findings, Defendant Weyant denied Plaintiff's application for access to select agents and toxins.  *Id.*

By acknowledging that the initial denial of Plaintiff's application had been based on the incorrect determination that Plaintiff falls into the first category of "restricted persons" under 18 U.S.C.  § 175b, Defendant Weyant's decision on reconsideration corrected the first of the two errors previously noted.  Defendant Weyant did not, however, address the second error discussed above—*i.e.*, the FBI's failure to specify whether it reasonably suspected Plaintiff's involvement with NORAID was knowing.  Although Defendant Weyant appears to have believed that the FBI made such a finding, concluding that "[t]he FBI reasonably suspects [] Joseph Poett of *knowing* involvement with Noraid, an organization that engages in domestic or international terrorism (as defined in 18 U.S.C. § 2331) or that engages in international crimes of violence," A.R. at 40 (emphasis added), the administrative record itself is unclear as to whether the FBI in fact did so.

C.     *The Instant Lawsuit*

Plaintiff filed the above-captioned matter on July 27, 2007, while his request for

reconsideration by DSAT remained pending.  *See* Compl, Docket No. [1].  Plaintiff, in his

Complaint, variously alleges that the decision to deny his application for access is "arbitrary,

capricious, an abuse of discretion, [and] otherwise not in accordance with the law," as well as in

violation of his First and Fifth Amendment rights.  *See generally id.*  Accordingly, although

Plaintiff's Complaint includes only two enumerated counts (Count One for Violation of the First

Amendment and Count Two for Violation of the Fifth Amendment), the parties have each treated

Plaintiff's Complaint as asserting three basic claims—namely that the decision to deny him

access was (1) arbitrary and capricious; (2) contrary to the law, in that it violated his First

Amendment rights; and (3) contrary to the law, in that it violated his Fifth Amendment rights.

*See* Defs.' MSJ at 10, 15; Pl.'s MSJ at 5.  Accordingly, despite the lack of clarity in Plaintiff's

Complaint, the Court shall proceed on the understanding that Plaintiff has asserted these three

claims in the instant lawsuit.[6]

      Currently pending before the Court are the parties' cross-motions for summary judgment.

---

[6] Although unclear, Plaintiff also appears to suggest in his motion for summary judgment that he intended to assert a fourth claim: that the decision denying him access to select agents and toxins was "not supported by substantial evidence."  *See* Pl.'s MSJ at 5.  It is, however, well established that "[r]eview under the substantial-evidence test is authorized only when the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself, or when the agency action is based on a public adjudicatory hearing."  *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 414 (internal citations omitted); *see also Aircraft Owners and Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 969 (D.C. Cir. 1979) ("Substantial evidence review under the APA is properly invoked only in cases subject to the formal hearing procedures of sections 556 and 557 of the APA, or otherwise reviewed after a formal agency hearing required by statute.").  As is made clear in reciting the factual background of this case, DSAT's decision was not made pursuant to the APA's formal hearing requirements.  Accordingly, the substantial evidence standard is not available in this case, and the Court shall proceed on the understanding, as stated above, that Plaintiff intended to assert only three claims in this action.  To the extent Plaintiff disputes this conclusion and maintains that he has also asserted a claim that the decision is not "supported by substantial evidence," he must move for leave to amend his Complaint and proffer relevant legal authority demonstrating the viability of such a claim.

*See* Defs.' MSJ, Docket No. [24]; Pl.'s MSJ, Docket No. [25].  The parties' briefing is now

complete, s*ee* Defs.' Opp'n, Docket No. [26]; Pl.'s Opp'n, Docket No. [27]; Defs.' Reply,

Docket No. [28]; and Pl.'s Reply, Docket No. [29], and the matter is therefore ripe for review

and resolution by the Court.

## II.  LEGAL STANDARDS

*A.     Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  In ruling upon a motion for summary judgment, the Court must view the

evidence in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayer v. United States Dep't of Treasury*, 956

F.2d 330, 333 (D.C. Cir.1992).  Furthermore, in ruling on cross-motions for summary judgment,

the court shall grant summary judgment only if one of the moving parties is entitled to judgment

as a matter of law upon material facts that are not genuinely disputed.  *See Rhoads v. McFerran*,

517 F.2d 66, 67 (2d Cir. 1975); *Long v. Gaines,* 167 F. Supp. 2d 75, 85 (D.D.C. 2001).  Each

moving party discharges its burden to support its motion by "informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)  (quoting Fed. R. Civ. P. 56(c)).  In opposing a motion for summary judgment, a

party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

        B.     *Administrative Procedure Act*

        Plaintiff filed the instant lawsuit seeking review of an agency's determination pursuant to the APA. As framed by the parties, Plaintiff asserts both non-constitutional and constitutional challenges to DSAT's decision to deny his application for access to select agents and toxins. The parties, however, disagree over the applicable standard of review for Plaintiff's challenges. Defendants assert that the same deferential standard of review applies to all of Plaintiff's claims in this case, while Plaintiff asserts that a "more searching" standard is required in reviewing First Amendment issues (Plaintiff is silent as to whether he believes this more stringent standard also applies to his Fifth Amendment claims). *See* Pl.'s Opp'n at 5-6; Defs.' Reply at 3. The Court therefore pauses briefly to set forth the applicable standards of review for Plaintiff's APA claims.

        1.     Plaintiff's Non-Constitutional APA Claim

        Under the APA, the Court is to set aside an agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2). "'The party challenging an agency's action as arbitrary and capricious bears the burden of proof.'" *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002) (quoting *Lomak Petroleum, Inc. v. Fed. Energy Regulatory Comm'n,* 206 F.3d 1193, 1198 (D.C. Cir. 2000)). To survive the "arbitrary and capricious" standard, an agency must "'examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *PPL Wallingford Energy LLC v. Fed. Energy Regulatory Comm'n*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs.*

*Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

(internal punctuation omitted). This standard of review is highly deferential to the agency, so

that a Court need not find that the agency's decision is "the only reasonable one, or even that it is

the result [the Court] would have reached had the question arisen in the first instance in judicial

proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Paper Serv. Corp.*, 461 U.S. 402, 422 (1983).

The Court is not entitled to substitute its judgment for that of the agency. *Citizens to Preserve*

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Finally, an agency decision must

generally be affirmed on the grounds stated therein, and a reviewing court may not attempt to

supply "a reasoned basis for the agency's action that the agency itself has not given." *Motor*

*Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Consistent with this review standard, judicial review is

confined to the full administrative record before the agency at the time the decision was made.

*Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).

>2.     Plaintiff's Constitutional Claims

The APA also provides that a reviewing court shall "hold unlawful and set aside agency

action" that is "not in accordance with law" or "contrary to constitutional right." 5 U.S.C. §§

706(2)(A)&(B). In contrast to the deferential standard of review described above, a court's

review of "constitutional challenges to agency actions . . . is *de novo*." *Cullman Reg'l Med. Ctr.*

*v. Shalala*, 945 F. Supp. 287, 293 (D.D.C. 1996). "[A] reviewing court owes no deference to the

agency's pronouncement on a constitutional question," and must instead make "'an independent

assessment of a citizen's claim of constitutional right when reviewing agency decision-making.'"

*Lead Indus. Ass'n v. Envtl. Prot. Agency*, 647 F.2d 1130, 1173-74 (D.C. Cir. 1980) (quoting

*Porter v. Califano,* 592 F.2d 770, 780 (5th Cir. 1979)). *See also United States v. District of*

17

*Columbia*, 897 F.2d 1152, 1158 (D.C. Cir. 1990) (indicating that review of constitutional claims

under the APA "mirror[s] review under the Constitution" itself).  Such "[i]ndependent judicial

judgment is especially appropriate in the First Amendment area."  *Porter*, 592 F.2d at 780, n. 15.

### III.  DISCUSSION

As explained above, the parties have treated Plaintiff's Complaint as setting forth three

claims under the APA.  First, Plaintiff asserts that the decision to deny him access is arbitrary and

capricious because, according to Plaintiff, the evidence in the record—namely, the January 9,

1992 letter—actually proves that Plaintiff lacked the necessary "scienter" with respect to his

involvement with NORAID.  Second, Plaintiff claims that the decision violates his First

Amendment right to free association because his application for access was denied based solely

on his "involvement" with NORAID without more.  Third, Plaintiff claims the decision violates

his Fifth Amendment procedural due process rights because he was not given notice of the

reasons for the denial and an opportunity to be heard.

Turning first to Plaintiff's non-constitutional claim, the heart of Plaintiff's argument on

this point is that his involvement with NORAID was not "knowing."  As explained above, DSAT

denied Plaintiff's application for access to select agents and toxins, concluding that Plaintiff had

been identified by the FBI as an individual reasonably suspected "of knowing involvement with

NORAID, an organization that engages in domestic or international terrorism . . . or that engages

in international crimes of violence."  A.R. at 40.  Plaintiff argues that this decision is arbitrary

and capricious because the evidence in the record (namely, the January 9, 1992 letter) does not

support a finding that Plaintiff had knowing involvement with NORAID.  Plaintiff contends that,

to the contrary, the letter demonstrates that Plaintiff's association with that organization was both

18

innocent and brief.  Plaintiff therefore urges the Court to find that DSAT's decision to deny him

access to select agents and toxins based on his "knowing" involvement with NORAID is both

arbitrary and capricious.

Significantly, despite Plaintiff's focus on the ultimate question of whether his

involvement with NORAID was in fact "knowing," the key inquiry for this Court is a much more

limited one—namely, whether the FBI *reasonably suspected* Plaintiff of having *knowing*

involvement with NORAID.  If so, the relevant statutory and regulatory provisions plainly

provide the Secretary with the discretion to limit or deny his access to select agents and toxins as

he deems appropriate, pursuant to 42 U.S.C. 262a(e)(3)(B)(ii) and 42 C.F.R. 73.10(g)(1).

Unfortunately, this is a question that the Court is unable to resolve on the current record.  *See*

*supra* at p. 12.  Although the FBI clearly indicated that it suspected Plaintiff of having

involvement with NORAID, the Court cannot ascertain from the administrative record whether

the FBI also suspected that such involvement was "knowing."

It is not the Court's role on review of Plaintiff's non-constitutional APA claim to

determine in the first instance whether the FBI could have reasonably suspected Plaintiff of

having knowing involvement with NORAID, such that DSAT's decision was reasonable.

"'[T]he focal point for judicial review should be the administrative record already in existence,

not some new record made initially by the reviewing court.'"  *Florida Power & Light Co.*, 470

U.S. at 743 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  Accordingly, "[i]f the record

before the agency does not support the agency action, if the agency has not considered all

relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on

the basis of the record before it, the proper course, except in rare circumstances, is to remand to

the agency for additional investigation or explanation.  The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."  *Id.*  Rather, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court."  *Id.*  Accordingly, the Court shall remand this case back to the agency for further clarification as to whether the FBI reasonably suspects Plaintiff of *knowing* involvement with NORAID, and shall deny without prejudice the parties' cross-motions for summary judgment with respect to Plaintiff's non-constitutional claim in light of this decision to remand.

The Court similarly concludes that it is appropriate to deny without prejudice the parties' cross-motions for summary judgment with respect to Plaintiff's constitutional claims at this time. "It is a fundamental rule of judicial restraint," that a court "not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of Ft. Berthold Reservation v. Wold Eng'g,* 467 U.S. 138, 157 (1984).  Because the Court does not know at this time what the agency may decide on remand, the Court declines to decide the constitutional challenges to that decision at this time.  Quite obviously, if the FBI concludes on remand that it does not reasonably suspect that Plaintiff's involvement with NORAID is "knowing," then DSAT's decision to deny Plaintiff's application for access is on shaky grounds and the Court may not need to reach Plaintiff's constitutional claims.  Moreover, Plaintiff's constitutional claims (in particular, his First Amendment claim) center on allegations that Plaintiff's involvement with NORAID was not knowing, and the Court's analysis of this issue would also benefit from further clarification of the administrative record.

## IV.  CONCLUSION

For the foregoing reasons, this case is remanded to the agency for further explanation consistent with this Memorandum Opinion, and the Defendants' [24] and Plaintiff's [25] Cross-Motions for Summary Judgment are DENIED WITHOUT PREJUDICE.  The parties shall file, on or before **October 16, 2009**, a joint status report suggesting a schedule for proceeding with this matter.  The schedule must include a date by which the agency shall complete its review on remand and submit its supplemental explanation to the Court as well as a schedule for re-briefing Plaintiff's claims, as may be appropriate, once Defendants' supplemental explanation has been submitted.  An appropriate Order accompanies this Memorandum Opinion.

Date:   September 29, 2009


                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge