UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH POETT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Civil Action No. 07-1374<br>CKK/DAR |

**MEMORANDUM OPINION AND ORDER**

Pending for determination by the undersigned Magistrate Judge is Plaintiff's Motion for Attorney's Fees and Costs of Suit. ("Plaintiff's Motion"), (Document No. 38). Upon consideration of the motion, the memoranda in support thereof and in opposition thereto, and the entire record herein, Plaintiff's motion will be denied.[1]

**BACKGROUND**

Plaintiff is employed as a chemist at the United States Department of Agriculture. (Complaint) ("Compl.") (Document No. 1), ¶ 10. On September 11, 2006, Plaintiff was served with an Official Notice that his employer had submitted an application on his behalf for clearance to access select agents and toxins. *Id.* ¶ 11. This same Official Notice informed Plaintiff that his application had been denied because the Attorney General determined, from the results of an FBI investigation, that Plaintiff was suspected of knowing involvement with an organization that

[1] Because the Court denies Plaintiff's motion outright, there is no reason to address the proper method by which fees should be calculated.

engages in intentional crimes of violence. *Id*. ¶ 12. Plaintiff filed the instant suit seeking reversal of that decision, attorney fees, costs of suit and "any other relief the court deems just and fair." *Id*. ¶¶ 32, 39.

The focus of the parties' dispute was a letter, dated January 9, 1992, written by Plaintiff to the British Ambassador September 29, 2009. Memorandum Opinion ("Mem. Op.") (Document No. 31) at 6; *see also* Administrative Record ("A.R.") (Document 22-2) at 4. In this letter, Plaintiff expressed regret over his past involvement with a terrorist organization named the Irish Northern Aid Committee in America ("NORAID"). A.R. at 4. The decision to deny Plaintiff access to select agents and toxins was predicated upon this letter. Mem. Op. at 6.

The Court ultimately found inconsistencies in the record that precluded a determination of whether the FBI suspected Plaintiff's involvement with NORAID to have been "knowing." *Id*. at 19. Consequently, the Court denied the parties' cross motions for summary judgment and remanded the case to the agency for further clarification on that point. *Id*. at 20-21.

On December 18, 2009, Defendants filed a Notice of FBI's Final Decision (Document No. 34), indicating that the FBI no longer reasonably suspected Plaintiff of knowing involvement with an organization that engages in domestic or international terrorism. Notice of FBI's Final Decision (Document No. 34) at 1. The court dismissed the case on January 18, 2010. (January 18, 2010 Memorandum Opinion) (Document No. 37) at 2. The Court referred the remaining issue of attorney's fees and costs to the undersigned Magistrate Judge on February 24, 2010.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that the Court's September 29, 2009 remand altered the legal

relationship between the parties by requiring Defendant to further investigate whether Plaintiff's involvement with NORAID was "knowing." Plaintiff's Memorandum in Support of his Motion for Attorney's Fees and Costs of Suit ("Plaintiff's Memorandum") at 6. Plaintiff argues that as a result of the change in the legal relationship, the remand rendered him a prevailing party. *Id*. Moreover, Plaintiff contends that Defendant's actions were not substantially justified, because they had no basis in law. *Id*. at 11-12. Plaintiff further avers that he is entitled to uncapped discretionary fees under 28 U.S.C. § 2412(b), because the facts of the case illustrate that Defendant acted in bad faith. *Id*. at 13.

Defendant contends that Plaintiff is not a prevailing party, because Plaintiff received no court-ordered relief. Defendants' Opposition to Plaintiff's Motion for Attorney's Fees ("Defendants' Opposition") (Document No. 40) at 5. The remand, according to Defendant, did not grant the specific relief requested by the Complaint. *Id*. Accordingly, Defendant argues that Plaintiff is ineligible for fees and costs. *Id*. at 5-6. Furthermore, Defendant avers that Plaintiff's actions and statements led the FBI to reasonably suspect Plaintiff of being involved with a terrorist organization. *Id*. at 6-7. Because the Bioterrorism Act only requires the Government to have a "reasonable suspicion" in order to deny access to select agents and toxins, Defendant contends that the Government's position was substantially justified. *Id*.

## APPLICABLE STANDARD

In order to be eligible for attorneys fees under 28 U.S.C. § 2412 (a)(1), the movant must be a prevailing party. 28 U.S.C. § 2412 (d)(1)(A). *District of Columbia v. Straus* delineated a three-part test for determining whether a litigant qualifies as a prevailing party under *Buckhannon*

*Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001):

> (1) there must be a "court ordered change in the legal relationship" of the parties; (2) the judgment must be in favor of the party seeking fees; and (3) the judicial pronouncement must be accompanied by judicial relief.

*District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-493 (D.C. Cir. 2003)) (internal quotation marks and alterations omitted); *see also Turner v. Nat'l. Transp. Bd.*, 608 F.3d 12, 16 (D.C. Cir. 2010). While the second step of the *Straus* test is relatively straightforward, the first and third steps are substantially linked by the requirement of "judicial imprimateur." *Buckhannon*, 532 U.S. at 605. Stated another way, these two steps combine to require the movant to demonstrate the existence of some form of court-ordered judicial relief that results in a change in the legal relationship of the parties. *See Straus*, 590 F.3d at 901. A judicial pronouncement alone is insufficient without such relief. *Id*.

The relief granted to a litigant does not necessarily have to be in the form of a judgment on the merits or a court-ordered consent decree. *Turner*, 608 F.3d at 16. A remand to the agency can be sufficient on its own if it is accompanied by court-ordered guidelines. *See Kean for Congress Committee v. Federal Election Committee*, *No. 04-0007*, 2006 WL 189830, at *2-3 (D.D.C. January 13, 2006) (finding adequate "judicial imprimatur" in a remand that provided a time limit for the subsequent agency proceedings); *see also Lake Pilots Ass'n, Inc. v. United States Coast Guard*, 310 F. Supp. 2d 333, 346 (D.D.C. 2004) (distinguishing between a remand that "limited the options the agency could take" and one without such limitations). However, the remand, must still result in a real world benefit. *See Waterman v. Maritime Subsidy Board*, 901

F.2d 1119, 1123 (D.C. Cir. 1990) (finding that a litigant moving for fees must "garner[] a benefit in the real world, outside the judicial/administrative process") (citation omitted); *see also Thomas*, 330 F.3d at 494 (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("A declaration must require 'some action (or cessation of action) by the defendant that the judgment produces - the payment of damages, or specific performance or the termination of some conduct.'").

**DISCUSSION**

***A. Plaintiff Is Not A Prevailing Party***

While Plaintiff did receive a real-world benefit, Plaintiff fails the *Straus* test, because the Court's remand was bereft of the necessary "judicial imprimatur" necessary for the undersigned to grant such status.[2] *Buckhannon*, 532 U.S. at 605. Stated alternatively, by granting this remand, the Court granted no cognizable judicial relief, because the remand did not "limit the options the agency could take." *Lake Pilots Ass'n, Inc.*, 310 F. Supp. 2d at 346. In fact, the Court acknowledged the possibility that on remand the FBI could still find Plaintiff to be reasonably suspected of having knowing involvement with NORAID:

> Significantly, despite Plaintiff's focus on the ultimate question of whether his involvement was in fact "knowing," the key inquiry for this court is a much more limited one—namely, whether the FBI *reasonably suspected* Plaintiff of having *knowing* involvement with NORAID. The relevant statutory and regulatory provisions plainly provide the Secretary with the discretion to limit or deny [Plaintiff's] access to select agents and toxins as he deems appropriate pursuant to 42 U.S.C. § 262a(e)(3)(B)(ii) and 42 C.F.R. § 73.10(g)(1).

Mem. Op. at 19. In the instant case, the Court's remand did require the FBI to clarify whether it

---

[2] Any benefit derived from the proceedings in this case would clearly favor Plaintiff, and thus Plaintiff has satisfied the second step of the *Straus* test. Because the Court bases its decision on other grounds, however, the undersigned declines to extend its discussion of this step any further.

believed Plaintiff's involvement with NORAID was knowing. *Id*. at 20. The remand, however, did not place any further restrictions upon the FBI's subsequent adjudication of the matter. A deadline would have even been sufficient. *See Kean*, 2006 WL 189830, at *2-3; *see also Northwest Coalition for Alternatives to Pesticides v. Environmental Protection Agency*, 421 F. Supp. 2d 123, 128 (D.D.C. 2006) (indicating that a remand for further explanation accompanied by a deadline sufficiently changed the legal relationship between the parties). In the instant case, however, the Court declined to provide that as well. For all intents and purposes, the FBI "unilaterally ended the adversarial relationship between the parties, leaving them where they were before the complaint was filed." *Turner*, 2010 WL 2352184 at *3. To draw any further conclusion from the present facts would be sheer inference.

The circumstances of instant case are a near mirror-image of those faced by this Court in *Roberts v. Harvey*. In *Harvey*, as in the instant case, the court ordered the agency to clarify its reasoning upon remand but placed no restrictions on the agency's decision-making process. *Roberts v. Harvey*, 468 F. Supp. 2d 147, 148 (D.D.C. 2007):

> In this case, plaintiff has only secured the opportunity for the ABCMR to reconsider one of several applications for reconsideration. Nothing in the Court's previous opinion dictates, or even suggests, that a substantive victory for plaintiff will follow from the reconsideration. *See Waterman*, 901 F.2d at 1123. To the contrary, the Court's opinion explicitly recognizes that the ABCMR may reach the exact same conclusion on remand, so long as it articulates its reasons for doing so. In short, this outcome by itself is too attenuated from the actual "benefit in the real world, outside the judicial/administrative process," *id.*, sought by plaintiff in filing this claim- *i.e.*, the upgrading of his discharge status-to render him a "prevailing party" under the precedent of this Circuit.

*Id*. at 150.

The outcome of the instant case is similarly attenuated from the relief sought, and thus highlights a clear difference between the relief sought by Plaintiff and the action ordered by the

Court. Plaintiff's complaint sought judgment and reversal of the FBI's decision. Compl., ¶¶ 32, 39. The Court did not grant such relief in issuing its remand. The Court ordered a clarification, but the lawsuit became moot as a result of Defendant's decision to remove the restrictions of Plaintiff's employment duties. Thus, the resolution of Plaintiff's claims is plainly a consequence of the Court's orders rather than Defendant's actions. There is no evidence that the court order requiring clarification substantially caused Defendant's change in position. *See Thomas*, 330 F.3d at 493 (finding that a court's grant of a preliminary injunction "did nothing to vindicate" a claim seeking to obtain a refund). Consequently, an award attorney fees and costs under these circumstances would fly in the face of *Buckhannon*, which precludes such an award when "the lawsuit was resolved by virtue of what the defendant did, not what the court ordered." *Thomas*, 330 F.3d at 492 (citing *Buckhannon*, 532 U.S. at 605).

***B. The Government's Actions Were Substantially Justified***

"[A] position can be justified even though it is not correct, and we believe it can be substantially (*i.e.* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, at 566 n. 2. Accordingly, the actual merits of this position are not at issue; the key inquiry is not whether Plaintiff was in fact knowingly involved, but "whether the FBI *reasonably suspected* Plaintiff of having knowing involvement with NORAID." Mem. Op. at 19. If the FBI did so reasonably suspect, then "the relevant statutory and regulatory provisions plainly provide the Secretary with the discretion to limit or deny [Plaintiff's] access to select agents and toxins as he deems appropriate." *Id.*

Because the applicable legal standard grants the agency some level of discretion in his

determination of reasonable suspicion of knowing involvement with a terrorist organization, the undersigned finds that the agency was substantially justified in restricting Plaintiff's access to restricted agents and toxins. Plaintiff's admission of any involvement with a known terrorist organization is on its own enough to warrant reasonable suspicion under either the "restricted persons" standard or the "reasonably suspect" standard. Plaintiff's recalcitrant reactions to interview requests provides further support for such a suspicion. As such, attorney's fees and costs are not appropriate under 28 U.S.C. § 2412 (d)(1)(A).[3]

**CONCLUSION**

For the foregoing reasons the undersigned finds that (1) Plaintiff is not a prevailing party, and (2) Defendants' actions were substantially justified. It is, therefore this 30th day of September, 2010,

**ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs of Suit (Document No. 38) is **DENIED.**

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge

[3] Because the Court finds that the agency's position was substantially justified, it would be inapposite to find simultaneously that the agency acted in bad faith as required to reward discretionary fees under 28 U.S.C. § 2412 (b). Substantial justification logically negates a finding of bad faith.